IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EDMUNDO M. COTO, | CASE NO. 7:14CV00685 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE, *ET AL.*, | By: Norman K. Moon |
| | United States District Judge |
| Defendant(s). | |

Edmundo M. Coto, an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* Coto alleges that prison officials substantially burdened his Raastafarian religious exercise in group worship; deprived him without due process of a protected interest in group worship and vocational programs; and treated him differently than general population inmates with regard to these group activities. For reasons more fully explained in my opinion entered today in a similar case, *Peters v. Clarke*, No. 7:14CV00598, I conclude that defendants' motion for summary judgment must be granted.

I. BACKGROUND

The relevant facts are undisputed and are outlined in greater detail in the *Peters* opinion, a copy of which will be provided to the parties in this action. Virginia Department of Corrections ("VDOC") grooming policy, Operating Procedure ("OP") 864.1 establishes uniform personal grooming standards for offenders to facilitate the identification of offenders and to promote safety, security, and sanitation. Specifically, OP 864.1 requires male inmates to keep their hair one inch or shorter in thickness or depth and prohibits certain hair styles. The policy states: "Failure to comply [with OP 864.1 grooming standards] could pose a security risk, health

hazard, or identification difficulties. Offenders who refuse to comply, or who chronically violate offender grooming standards, will be managed as potential risks to facility order and safety." OP 864.1(IV)(G)(4). Noncompliant inmates receive a security classification of Level H and remain in segregation until they comply with the grooming requirements. OP 830.2(IV)(A)(1); OP 864.1(IV)(H).

If a Level H inmate meets certain criteria, he may be moved to the 864.1 Violators Housing Unit ("VHU"), currently located at Wallens Ridge State Prison. *See* OP 864.1(IV)(I). As set forth in local OP 864A(IV)(A), the VDOC maintains the VHU pod in order to manage safely and "distinctively" inmates who are noncompliant with the grooming standards, and to encourage grooming compliance, while also allowing such inmates participation in groups and privileges not otherwise available to them in segregation so as to improve their quality of life. It is not a general population pod, but offers more activities and privileges than are available to segregation inmates. VHU residents wear distinctively colored jumpsuits and cannot be housed with or be near non-VHU residents, with the exception of the school tutor.[1] VHU residents have access to various educational programs, such as Anger Management, Thinking for a Change, and the Department of Correctional Education ("DCE") programming. They may practice their religious beliefs in their cells or with other offenders in the pod and may meet with the chaplain. Since January 16, 2015, inmates in the VHU pod may also attend a group religious service on Fridays conducted in the DCE area of the prison.

Coto is a Virgin Islands prisoner, who has been in the custody of the Virginia Department of Corrections ("VDOC") since June 2011, pursuant to a contract between the VDOC and its Virgin Islands counterpart. When he first arrived at Wallens Ridge, officials advised him that to

---

[1] Coto states that general population inmates sometimes serve food to VHU inmates, through the doors between the two units. He does not dispute defendants' evidence, however, that policy generally prohibits VHU inmates from being near general population inmates.

be in the general population, he would need to cut his hair, in compliance with OP 864.1. Based on his Rastafarian religious beliefs,[2] Coto refused to cut his hair, so officials placed him in a segregation unit, where he could not participate in group activities with other inmates. Other Virgin Islands inmates complied with OP 864.1 by cutting their hair and were assigned to the general population.

In 2013, the VDOC issued a formal policy establishing the current VHU at Wallens Ridge. Coto has been in this VHU pod since April 2013. On October 30, 2013, he filed an informal complaint asking for Rastafarian group religious services. The responding officer told him to address his request about this policy to the operations manager. Coto's grievance on this issue was rejected as untimely, because he did not file it within 30 days of his transfer to the VHU. Officers also advised him that he could conduct religious services in the pod. Coto filed informal complaints and grievances in mid-2014, about his lack of access to vocational programs[3] and group religious services available to other Virgin Island inmates housed in the general population. Officers ruled his grievances untimely. They also advised Coto that he could hold group religious meetings in the VHU and could participate in educational programs like other VHU inmates. Coto states that he has participated in "the Book Program," working toward obtaining his "GED," with the help of assigned jailhouse tutors. (docket no. 4, at 72-74.)

---

[2] Coto does not offer any specific information about his Rastafarian beliefs. Information online indicates: "Rastafari is an Abrahamic new religious movement that accepts Haile Selassie I, the Ethiopian emperor from 1930 to 1974 as God incarnate and the Messiah who will deliver believers to the Promised Land, identified by Rastas as Ethiopia. It has its roots in black-empowerment and back-to-Africa movements." Catherine Beyer, *Rastafari*, http://altreligion.about.com/od/alternativereligionsaz/a/rastafari.htm (last visited August 14, 2015).

[3] In his grievances and his § 1983 complaint, Coto did not specify any particular vocational program in which he wished to participate that was not available to VHU inmates. In his declaration in response to defendants' motion for summary judgment, he offers welding, metal work, carpentry, and custodial management as examples of the vocational programs VHU inmates cannot enter. He does not state, however, that he, himself, has requested permission to participate in any of these programs.

3

He does not indicate whether he has participated in the group Rastafarian services now available to VHU inmates.

Coto filed this § 1983 complaint in December 2014 against numerous supervisory officials at Wallens Ridge.[4] Liberally construed, Coto's complaint alleges the following claims for relief:

1. Coto has a liberty or property interest in being provided access to vocational programs while in prison and a liberty interest in participating in group religious services, and defendants deprived him of these interests without due process;

2. Defendants failed to allow Coto to participate in group religious services and vocational programs because of his VHU status, while providing such programs to other general population inmates, in violation of the Equal Protection Clause.[5]

3. Defendants denied Coto the opportunity to participate in separate Rastafarian group services because of his VHU status, in violation of his rights under the First Amendment and RLUIPA.[6]

4. Supervisory officials failed to correct the violations alleged in Claims 1 through 3.

Coto seeks compensatory damages, as well as declaratory and injunctive relief ordering his removal from the VDOC.

Defendants responded to Coto's complaint with a motion for summary judgment, providing additional and undisputed evidence about OP 864.1 and the VHU. Coto has responded to their motion, making the matter ripe for disposition.

---

[4] The defendants are: Harold W. Clarke, David Robinson, Gregory Holloway, Rebecca Young, Quincy Reynolds, Brenda Ravizee, and two "John/Jane Doe" defendants, identified as regional ombudsmen.

[5] Coto complains that VHU inmates cannot have contact visits or display photos, like non-VHU inmates can, and VHU inmates do not receive as much outside recreation as non-VHU inmates do. Coto complains that one VHU inmate was allowed to participate in a group religious service in the kitchen area with other, general population Rastafarian inmates on one occasion: June 26, 2014. Thereafter, that inmate was denied access to the group service because of his VHU status. Coto does not raise these details in his claim, however, and in any event, for the reasons herein stated, they do not implicate his equal protection rights.

[6] Coto does not argue that OP 864.1 or other facets of the VHU operating policy violate his rights under the Constitution or RLUIPA.

4

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### B. No Personal Involvement

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). In his complaint, Coto does not affirmatively state conduct or omissions by each of the defendants, personally that violated his constitutional rights. *See, e.g., Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995). Similarly, no supervisory official can be held automatically liable for violations possibly committed by his or her subordinate employees; the doctrine of *respondeat superior* does not apply in § 1983 cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, Coto fails to state

5

facts on which he could hold any defendant liable, as a supervisor, for violations committed by subordinates.[7] On these grounds, defendants are entitled to summary judgment.[8]

C. No § 1983 Due Process Violation

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Phiphus*, 435 U.S. 247, 259 (1978).

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). More specifically, he must (a) "point to a [state or federal] law or policy providing him with an expectation of avoiding the conditions of his confinement," and (b) "demonstrate that those conditions are harsh and atypical in relation

---

[7] In his verified memorandum in response to the summary judgment motion Coto attempts to explain the defendants' personal involvement in the alleged constitutional violations. He does not properly move to amend his complaint with this information, however. Moreover, even if he could show each defendant's actions related to his claims, defendants are, nevertheless, entitled to summary judgment as to the claims themselves.

In this same response, Coto asserts that Defendant Ravizee "short stopped [his] grievances which were relevant to [his] complaint," by rejecting his grievances as time barred. Merely responding to an inmate's administrative remedies does not implicate any constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that prisoners do not have a constitutional right to participate in grievance procedures); *Brown v. Va. Dep't Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009) (citing *Adams*, stating that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation"). Moreover, the fact that Coto's grievances were rejected as untimely presents, as an alternative ground for dismissal of his claims, his failure to properly exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (holding that to meet exhaustion requirement of § 1997e(a), grievant must comply with all "critical procedural rules" of prison's grievance system, including filing deadlines).

[8] Coto also fails to state facts concerning specific actions undertaken by his John Doe defendants in violation of his constitutional rights. Apparently, he seeks to hold them liable for affirming Ms. Ravizee's rejection of his grievances as untimely filed. As stated, these allegations do not implicate any constitutionally protected right. *Brown*, 2009 WL 87459, at *13. Accordingly, I will dismiss all claims against these defendants without prejudice as frivolous. *See* 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of prisoner's claim seeking "redress from a governmental entity or officer or employee of a governmental entity" if court finds claim to "frivolous, malicious, or fails to state a claim upon which relief may be granted. . . .").

6

to the ordinary incidents of prison life," *id.* at 252, or "will inevitably affect the duration" of his confinement. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). "[W]hen a state policy expressly and unambiguously disclaims a particular expectation, an inmate cannot allege a liberty interest in that expectation." *Prieto*, 780 F.3d at 252.

Coto appears to argue that he has a protected liberty or property interest under Virgin Islands law, 5 V.I. Code § 4503(c),[9] in being provided access to vocational programs while in prison,[10] and a protected interest under the First Amendment of the Constitution in participating in group religious services while in prison. I conclude, however, that even if an inmate may have some "expectations" arising under these provisions while assigned to the VDOC general population,[11] any such expectations are trumped by the VDOC grooming policy. OP 864.1 expressly provides that *any* inmate who fails to comply with the grooming policy will be housed in segregation until he complies. Coto admits that he has not complied with the hair length requirements of OP 864.1. Thus, he cannot claim a state-created liberty interest in participating in all programs allowed to inmates in less-restrictive security classifications. *Prieto*, 780 F.3d at 252. Accordingly, his § 1983 due process claims regarding his inability to attend such group

---

[9] Section 4503(c) provides that Virgin Islands prison administrators, before transferring inmates to other states, "shall ascertain and insure the availability of educational *or* vocational programs . . . for the purpose of enabling such inmates . . . to gain marketable skills" (emphasis added).

[10] In relation to his due process claims, Coto also references the contract by which the Virgin Islands correctional department arranged to confine him in a VDOC prison. Contract claims under state law are not independently actionable under § 1983. Because I herein conclude that defendants are entitled to summary judgment on Coto's § 1983 claims, I decline to exercise supplemental jurisdiction over any related state law claims and will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c).

[11] The United States Supreme Court has made it clear that changes in prisoners' classifications or confinement conditions that trigger constitutional due process protections will be rare. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224, 228 (1976) ("[W]e cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause" by its own force; and whatever "expectation the prisoner may have [under state regulations to certain conditions of confinement are] too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

programs under his current circumstances fails on the first prong of the due process analysis.[12] Therefore, I will grant defendants' motion for summary judgment as to Coto's due process claims.

## D. No Equal Protection Problem

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Courts have interpreted this clause as commanding that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To survive summary judgment, Coto must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Disparate treatment of similarly situated prisoners "passes muster so long as [it] is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Coto's equal protection claims fail on the first facet of this analysis. Because Coto is not in compliance with OP 864.1 and is housed in the VHU pod, he is not similarly situated to other Virgin Islands inmates, who are in compliance with OP 864.1 and are housed in the general population at Wallens Ridge. Because the two groups are not similarly situated, officials may lawfully treat them differently. Moreover, this policy of segregating higher security risk inmates is rationally related to clearly established state interests in maintaining prison security. For the

---

[12] For reasons explained in my opinion in *Peters v. Clarke*, No. 7:14CV00598, I also find that Coto fails to demonstrate that VHU policies against group activity participation posed any atypical hardship on him. For example, he states that he is working toward obtaining his GED—an accomplishment which will make him more marketable for employment purposes upon his release.

8

stated reasons, I will grant defendants' motion for summary judgment as to Coto's equal protection claims.

E. No Free Exercise or RLUIPA Claim

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). A federal statute now provides more direct protection of prisoners' religious exercise: "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (citing 42 U.S.C. § 2000cc-1(a)). A claim under the First Amendment or RLUIPA requires the inmate to prove a substantial burden on a practice "sincerely based on a religious belief." *Holt v. Hobbs*, __U.S. __, 135 S. Ct. 853, 862 (2015) (RLUIPA); *O'Lone, supra* (First Amendment). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

Coto fails to show that VHU policies against group religious services of VHU inmates with non-VHU inmates have put a substantial burden on any sincere religious belief. Coto does not point to any particular tenets of the Rastafarian faith indicating that group worship services are part of the practice of such believers. Nor does Coto offer any evidence that his desire to meet with other Rastafarians is for religious, rather than social purposes. Most importantly, even if Coto could prove a religious basis for his wish to meet with other Rastafarians, he does not

9

demonstrate that VHU policy has substantially burdened his ability to exercise that religious practice. He does not indicate that he attempted hold such group meetings in the VHU pod, even though he had the capability to do so.[13] He also offers no evidence that the temporary inability to have a Rastafarian group service outside the VHU pressured him to modify his behavior so as to violate his beliefs. Finally, since January 2015, Coto has had the ability to hold group meetings with other VHU Rastafarians.

For the stated reasons, I conclude that Coto has failed to show any respect in which VHU policy substantially burdened his religious exercise so as to violate his rights under the First Amendment or RLUIPA. Therefore, I will grant defendants' motion for summary judgment as to these claims.[14]

---

[13] In his declaration in response to the summary judgment motion, Coto states that group services in the VHU pod were not possible, because inmates are not allowed to bring religious books and other materials out into the pod, and if they had done so, such items would have been confiscated. Coto's grievances about group services do not mention any need for Rastafarian believers to bring these items to group services, however. Prison officials cannot be held liable under the First Amendment or RLUIPA for failing to accommodate a religious practice of which they were never notified. *See, e.g., Lovelace*, 472 F.3d at 194 (holding that negligent conduct is not sufficient grounds for liability). Moreover, because Coto did not exhaust administrative remedies about this aspect of his group worship claim before presenting these allegations, this aspect of his claim is barred under § 1997e(a).

[14] Moreover, even if Coto could show that temporary lack of access to separate group worship services substantially burdened that aspect of his religious practice, he has no claim for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277,___, 131 S. Ct. 1651, 1658-59 (2011); *Rendleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009). For different reasons, he also has no claim for monetary damages under the First Amendment. From July 2014 to January 2015, even without group services, Coto could practice his beliefs in other ways, by wearing his hair uncut and worshiping in his cell, and VHU policy is reasonably related to prison interests in maintaining security and limiting staffing costs and efforts. *See O'Lone*, 482 U.S. at 350-52 (applying four-factor analysis of *Turner v. Safely*, 482 U.S. 78 (1987)).

## III. CONCLUSION

For the reasons stated, I will grant defendants' motion for summary judgment. An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of August, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

11

Case 7:14-cv-00685-NKM-RSB Document 19 Filed 08/26/15 Page 11 of 11 Pageid#: 219